IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**WESCO INSURANCE COMPANY,**

Plaintiff,

v.

**COLON SANTANA,**

Defendant.

CIVIL ACTION NO.   19-925

JUDGE JOY FLOWERS CONTI

## OPINION

Pending before the court in this insurance coverage dispute are: (1) a motion to quash a subpoena served by Wesco Insurance Company ("Wesco") on former counsel for the defendant policyholder, Colon Santana ("Santana" or "defendant") (ECF No. 27); and (2) a motion to dismiss count II of the complaint (ECF No. 36).  The motions are thoroughly briefed (ECF Nos. 33, 34, 35, 37, 42, 48, 54) and the parties submitted numerous exhibits.  Wesco's motion for default judgment (ECF No. 50) is not ripe and will be separately addressed.

I.   Motion to Quash

    A.    Factual and Procedural Background

Defendant's complaint or narrative:

A building which Santana owned was destroyed by arson at 2:00 a.m. on December 21, 2018.  Santana had a $757,000 insurance policy from Wesco.  Santana was in Cancun, Mexico, at the time.  In the police investigation, the admitted arsonist, Dustin Morrow ("Morrow"), claimed that he was hired by defendant's daughter, Anna Santana ("Anna"), to set the fire.  Morrow also told the police that approximately 10 to 30 minutes after the fire, he observed Anna talking on a speaker phone with her father.  Although Morrow did not understand the

conversation because it was in Spanish, Anna turned to him and said: "My dad says good job." (ECF No. 34-1 at 45). Later that night, Anna took Morrow to the hospital to be treated for burns. *Id.* Anna and her husband, Robert Spruill, are also facing criminal charges. Cell phone records obtained by the police reflect that Santana and Anna were in contact numerous times in the hours before and after the fire (ECF No. 34-1 at 48-50).

On February 8, 2019, Wesco asked Santana to appear at an Examination Under Oath with the cell phone devices he used since November 1, 2018 for downloading. (ECF No. 134-1 at 142). The notice stated: "Please note any effort on your part to destroy, alter, remove, dispose of or otherwise affect any of these devices and/or the contents thereof will be construed as a breach of your duty to cooperate with your insurance company." *Id.* On February 19, 2019, Santana appeared at an Examination Under Oath, at which Wesco asked to have an independent expert preserve the contents of his cell phone under password protection so that Wesco could not access it. Santana declined. His former counsel, Stanley Booker ("Booker") stated they would cooperate, but raised concerns about attorney-client communications and represented that the information would be provided as soon as was practical, i.e., within 30 days. (ECF No. 34-1 at 163). The disclosure of the cell phone contents did not occur. Santana did not respond to several follow-up requests to produce his cell phone. Wesco filed this lawsuit in July 2019.

At a case management conference on November 20, 2019, the court ordered Santana to turn over his cell phone for imaging by an independent examiner within 30 days. (Transcript, ECF No. 17 at 7). In the pending motion to quash, Booker states that he verbally communicated with Santana from November 20, 2019, through January 12, 2020, in an attempt to have him produce the cell phone for evaluation, but without success. (ECF No. 27 ¶ 3). At his deposition, Santana testified that he received multiple emails about providing the cell phone. (ECF No. 34-1

at 62).  This testimony is not consistent with the motion to quash, which states that except for one text message, all communications about turning over the phone were verbal (ECF No. 27 ¶ 4).

Santana failed to turn over the cell phone within 30 days, as ordered by the court. Wesco's counsel sent emails about the failure to produce the cell phone to Booker on December 17 and to Booker and his associate, Melanie Womer ("Womer") on December 23, 2019 (ECF No. 34-1, Ex. 11 and 12), but received no response.  On December 24, 2019, Womer sent a text message to Santana about producing the cell phone.  (ECF No. 27 ¶ 4).  The portion of the text exchange attached to Santana's reply brief reads: "JR.  I'm going to need your phone either today or Friday  -- can you get it to me?  It was due December 20th & we still haven't turned it over & the attorney is emailing us constantly."  Santana responded:  "Mel wen [sic] Stanley get in please tell him to call me."  (ECF No. 35-11).

According to Santana, he last had the cell phone on December 28, 2019, at a gym in Austintown, Ohio (ECF No. 34-1 at 56-57; ECF No. 35 and exhibits attached thereto).  The court takes judicial notice that Santana continued to possess the cell phone after the court's deadline of December 20, 2019, for it to be turned over.

On December 31, 2019, in response to another email, Womer notified Wesco that Santana informed her that the cell phone had been lost or stolen.  It is unclear when and how Santana informed his attorneys about the loss.  On January 12, 2020, Booker withdrew his representation and current counsel entered his appearance.

On February 25, 2020, the court held another status conference.  Wesco reported that the phone had not been turned over, Santana's deposition had not been taken and Wesco was trying to obtain records from the phone company.  The parties did participate in a mediation, which was

unsuccessful.  The court allowed Santana to plead a bad faith counterclaim, but stayed discovery

on that claim until the underlying breach of contract claim is resolved.  Santana's current counsel

was instructed to obtain the phone records associated with two phone numbers belonging to

Santana.  (Transcript, ECF No. 32).

On March 17, 2020, Wesco  issued a subpoena on Booker's law firm, seeking:  "copies

of all emails, texts, voice mail audios, letters, and other communications sent to and received

from Colon Santana between November 19, 2019 and January 1, 2020 in any way relating to the

Court's order of November 20, 2019 that Mr. Santana turn over his cell phone within 30 days of

November 20."  (ECF No. 34-1 at 10).  The subpoena provided that counsel could redact any

portion that did not relate to that topic.

On May 4, 2020, in response to an inquiry from the court about whether the motion to

quash was moot, Santana's current counsel filed a declaration explaining that he received over

1000 pages of phone records from AT & T and was in the process of producing them to Wesco.

Wesco maintains that the phone records do not provide all the relevant information.


B.    Legal Analysis

Wesco contends that the communications sought in the subpoena are important because it

intends to seek default judgment as a sanction for Santana's refusal to turn over the phone.

Wesco also indicated its intent to seek summary judgment on the breach of contract claim due to

Santana's failure to cooperate with its investigation, as required by the insurance policy.  The

court expresses no opinion about the potential merits of these motions.

Wesco maintains that communications from attorney to client about the contents of a

court order are not privileged because they do not involve facts originally revealed by the client.

*In re Tire Workers Asbestos Litig.*, 125 F.R.D. 617, 621 (E.D. Pa. 1989) ("the attorney-client privilege, as codified in Pennsylvania, is limited and protects only information communicated in confidence by the client to counsel"). Santana's current attorney concedes that the communications sought in the subpoena are not privileged and permitted questions about those communications in Santana's deposition. (ECF No. 134-1 at 60).

Santana contends, however, that the motion to quash is moot because he agreed to produce a portion of a text message dated December 24, 2019 (attached to his response at ECF No. 35-11) and he requested the applicable phone records from AT&T (ECF No. 35 at 9-10). Wesco contends that the issue is not moot and identifies four possible gaps: (1) any missing portions of the text message exchange on December 24, 2019; (2) any emails concerning turning over the cell phone, as Santana testified about in his deposition; (3) audio recordings and notes to file of oral conversations about turning over the cell phone; and (4) whether individual, as opposed to law firm, communications from Booker or Womer exist (ECF No. 42). Wesco requests that the court conduct an *in camera* review of these documents, or order Booker and Womer to submit written declarations that no such documents exist.

The information sought by Wesco is clearly relevant to the issues pending before the court. Arson by an insured to collect the proceeds of an insurance policy is an affirmative defense on which the insurer has the burden of proof. *Sperrazza v. Cambridge Mut. Fire Ins. Co.*, 459 A.2d 409, 410 (Pa. Super. Ct. 1983). Santana's repeated failure to produce or preserve the contents of his cell phone, from which Wesco might obtain evidence to prove its arson defense, "supports a reasonable and legitimate inference that the insured fraudulently burned or caused the building to be burned." *Id.* Santana's failure to turn over the cell phone was in violation of a court order. *See* Fed. R. Civ. P. 37(b).

The court will conduct an *in camera* review of the entire text message exchange on December 24, 2019, to determine whether any portions are privileged.  Santana's current counsel shall provide that entire exchange to the court forthwith, by email to chambers staff.

In addition, on or before June 21, 2020, attorneys Booker and Womer shall file declarations about all communications with Santana that were made or attempted, for the period February 8, 2019 (the date of Wesco's original request to examine the cell phone) through January 12, 2020 (the date Booker withdrew his appearance), in the following categories:  (1) all communications of any kind (including but not limited to texts, emails and verbal) about turning over the cell phone; (2) all audio recordings of such communications; and (3) all attorney notes or memos about turning over the cell phone.  Booker and Womer should not disclose the contents of any attorney-client privileged communications in their declarations.  The court takes under advisement whether or not to conduct an *in camera* review of some or all of the communications.

The motion to quash (ECF No. 27) is TAKEN UNDER ADVISEMENT pending further compliance with this opinion and accompanying order.


II.  Motion to Dismiss Count II

In Count II of the complaint, Wesco seeks other relief, including attorney fees.  Santana moves pursuant to Federal Rule of Civil Procedure 12(c) that Count II fails to plead a cognizable basis for recovery of attorney fees.  In response, Wesco explains that it is entitled to attorney fees under Pennsylvania law, 18 Pa. Cons. Stat. § 4117(g).  Wesco's complaint does not refer to section 4117(g).

Federal courts applying Pennsylvania law recognize that it provides a civil remedy to an

insurer when its insured commits insurance fraud.  Section 4117(g) provides:

> (g) Civil action.—An insurer damaged as a result of a violation of this section may sue therefor in any court of competent jurisdiction to recover compensatory damages, which may include reasonable investigation expenses, costs of suit and attorney fees. An insurer may recover treble damages if the court determines that the defendant has engaged in a pattern of violating this section.

Courts have interpreted the legislature's use of the term "may sue" in section 4117(g) to evince a legislative intent that a claim for relief under section 4117(g) must be brought as a separate and free-standing legal claim.  *McKean v. Nationwide Ins. Co.*, No. 3:12-CV-1206, 2015 WL 11670157, at *2 (M.D. Pa. May 7, 2015), report and recommendation adopted in part, rejected in part *sub nom. Stephen v. Nationwide Ins. Co.*, No. 3:12-CV-1206, 2015 WL 12517016 (M.D. Pa. May 28, 2015) (collecting decisions).  An insurer may not simply list attorney fees as part of the relief it seeks.  Because Wesco's claim for attorney fees under section 4117(g) sounds in fraud, it must meet Rule 9(b)'s stringent pleading standard.  *Barnes v. Allstate Prop. & Cas. Ins. Co.*, No. CIV.A. 12-3418, 2013 WL 592207, at *3 (E.D. Pa. Feb. 15, 2013).

The court will dismiss Wesco's claim for attorney fees in Count II, albeit without prejudice.  *See id.*  On or before June 25, 2020, Wesco may file an amended complaint to assert a separate claim under section 4117(g).  Santana shall respond to any amended complaint in accordance with the Federal Rules of Civil Procedure.

In accordance with the foregoing, Santana's motion to dismiss the claim for attorney fees in Count II (ECF No. 36) is GRANTED.

III. <u>Conclusion</u>

In accordance with the foregoing, the motion to quash (ECF No. 27) is TAKEN UNDER ADVISEMENT pending compliance with this opinion and accompanying order.  Santana's motion to dismiss the claim for attorney fees in Count II (ECF No. 36) is GRANTED, without prejudice to Wesco's opportunity to file an amended complaint to assert a separate claim under section 4117(g).


An appropriate order follows.




Dated: June 5, 2020


                                                          <u>/s/ Joy Flowers Conti</u>
                                                          Joy Flowers Conti
                                                          Senior United States District Judge